Jack JERSAWITZ, Plaintiff,

v.

Jack HANBERRY, et al., Defendants.

Civ. A. No. C83–2202A.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 29, 1985.

Joseph M. Beck and Norman P. Stein, Jeffrey O. Bramlett, Bondurant, Miller, Hishon & Stephenson, Atlanta, Ga., for plaintiff.

Barbara V. Tinsley, Asst. U.S. Atty., Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This action is presently before the court on the parties' cross-motions for summary judgment. Federal jurisdiction is predicated upon the existence of a federal question, 28 U.S.C. § 1331 (West Supp.1984). For the reasons stated herein, defendants' motion for summary judgment is GRANTED and plaintiff's motion for summary judgment is DENIED.

## FACTUAL BACKGROUND

The parties to this action have stipulated that summary judgment is appropriate because the facts are not in dispute. On October 7, 1983, plaintiff requested permission to interview a particular inmate who was temporarily confined at the Atlanta Federal Penitentiary. Plaintiff sought the interview for use on a self-produced television show called "Let's Tell It Like It Is," which airs via a public access channel provided by Cable Atlanta. Plaintiff is not employed by Cable Atlanta nor is he subject to its control or supervision; instead he considers himself an independent journalist.

Warden Hanberry of the Atlanta Federal Penitentiary denied plaintiff's request to interview the specified inmate. The Warden based this denial on the fact that plaintiff did not qualify as a "representative of the news media" under the applicable Bureau of Prisons' definition, 28 C.F.R. § 540.2(b) (1984). Plaintiff admits that he is not a "representative of the news media" as defined by the regulation.

The Bureau of Prisons' regulations governing federal prisoners' contact with the media are embodied in 28 C.F.R. § 540.60, et seq. (1984). Those regulations permit, under certain conditions, "representatives of the news media" to conduct interviews with prisoners incarcerated in federal penal institutions, including the Atlanta Penitentiary. The regulations define "representatives of the news media" as follows:

Persons whose principal employment is to gather or report news for:

1) A newspaper which qualifies as a general circulation newspaper in the community in which it is published. A newspaper is one of "general circulation" if it circulates among the general public and if it publishes news of a general character of general interest to the public such as news of political, religious, commercial, or social affairs. A key test to determine whether a newspaper qualifies as a "general circulation" newspaper is to determine whether the paper qualifies for the purpose of publishing legal notices in the community in which it is located or the area to which it distributes;

2) A news magazine which has a national circulation and is sold by newsstands and by mail subscription to the general public;

3) A national or international news service; or

4) A radio or television news program of a station holding a Federal Communications Commission license.

28 C.F.R. § 540.2(b).

Plaintiff originally brought this action seeking a mandamus ordering the warden to admit him to the Atlanta Penitentiary for the purpose of interviewing the inmate. During the pendency of the proceedings, the inmate was transferred from the Atlanta Penitentiary to his designated place of confinement. The court therefore ruled that the mandamus issue was moot.

Subsequently plaintiff filed an amended complaint in which he seeks the following: (1) a declaratory judgment that 28 C.F.R. § 540.60 et seq is "unconstitutional insofar as it distinguishes between plaintiff and 'representataives of the media'" (Plaintiff's Complaint, ¶ 1); (2) an order permanently enjoining defendants from denying

plaintiff the privilege of interviewing prisoners at the Atlanta Penitentiary for the reason that he is not a "representative of the media"; and (3) an order requiring the defendants to either bring the inmate to Atlanta for an interview or to pay to transport plaintiff to the inmate's place of confinement for an interview. By order dated February 6, 1985, the court granted plaintiff leave to file the brief of the Atlanta Press Club, an amicus curiae.

## DISCUSSION

As noted earlier, the parties have agreed that summary judgment is appropriate in this case. The issue before the court, therefore, is whether the prison regulations, 28 C.F.R. § 540.60 *et seq.*, are unconstitutional, as plaintiff alleges.

Plaintiff has alleged that the regulations violate both the First and the Fifth Amendments to the United States Constitution. Specifically, plaintiff alleges that the regulations violate the First Amendment "by denying plaintiff a privilege extended to segments of the general public, to wit the privilege of 'representatives of the news media' to interview prisoners...." and by "distinguishing and classifying among different categories of the press...." (Plaintiff's Complaint, Count 1, ¶¶ a and b). While these allegations purport to state a First Amendment violation, it appears to the court that they more correctly allege an equal protection violation. The Supreme Court has held that restrictions on media access to prisons do not abridge the First Amendment's guarantee of freedom of the press. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1973); *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974). In any event this case, unlike *Pell* and *Saxbe*, does not present a case of prison regulations totally prohibiting the press from interviewing prisoners, instead the question in this case is whether the regulations' classifications are constitutionally valid. For this reason the court will focus on plaintiff's claims of a Fifth Amendment violation.

In Count II of his complaint, plaintiff alleges that the regulations "violated the Due Process Clause of the Fifth Amendment to the United States Constitution by granting privileges to selected categories of the media while denying them to plaintiff." In his motion for summary judgment plaintiff contends that the government must have a compelling state interest in order to validate the classifications. This standard is simply not the correct standard by which to judge the regulations. As the Atlanta Press Club correctly notes in its amicus brief, the proper standard by which to measure the regulations is whether the government has a rational basis for its actions. The "compelling state interest" analysis only arises in cases involving government action which implicates a constitutional right or affects a suspect class. Clearly the class to which plaintiff belongs, i.e., independent journalists, is not a suspect class under relevant precedents, nor does this case implicate fundamental constitutional rights. As noted earlier, the Supreme Court has held that freedom of the press is not abridged by restrictions on prison access. *Pell; Saxbe, supra.* The court has no choice but to interpret these cases as holding that there is no fundamental right to enter prisons to gather news.[1]

■ The issue before the court, therefore, is whether the government has a rational basis for defining "representatives of the news media" as it does, thereby excluding plaintiff and other journalists like him. This analysis will focus only on that portion of the regulation's definition which is applicable to plaintiff, i.e. 28 C.F.R. § 540.2(b)(4). According to the government its definition is necessary in order to insure "limited access for interviews while insuring that the representatives would be responsible persons em-

---

1. While this court feels that the better analysis would have been to recognize the First Amendment right, but to acknowledge that the government has compelling reasons for the restrictions, this does not appear to be the analysis employed by the Court in *Pell* and *Saxbe*. This court has no choice but to abide by these decisions.

ployed by and responsible to recognized media organizations." (Defendants' Brief in Support of Motion for Summary Judgment, p. 5). Its definition, i.e., the requirement of affiliation with a federally recognized and licensed media organization, enables the prison to readily ascertain the credentials and responsibility of the individual seeking prison access. Given the prisons' obvious need to maintain security and order within the prisons, and the need for administrative ease in implementing visitor regulations, this court holds that the government does in fact have a rational basis for its classifications.[2]

 Plaintiff also contends that although he did not qualify for admittance as a "representative of the news media," he should have been granted entry under the warden's discretionary power to allow members of the general public admittance. In this case the warden, in the exercise of his discretion, chose not to admit plaintiff as a non-qualifying reporter or member of the general public. In order to find this decision improper the court would have to determine that the warden's decision was an abuse of his discretion, i.e., either arbitrary or capricious. Plaintiff has presented no evidence whatsoever to support such a finding. Defendants, on the other hand, have shown that such is not the case. According to Warden Hanberry, he does not allow persons, other than those recognized by the regulations, inside the prison unless they "demonstrate exceptional circumstances which satisfy [his] concern regarding the security and unhampered administration of the prison." (Hanberry Affidavit, ¶ 5). Warden Hanberry further states that plaintiff did not "present facts ... which allowed [the warden] to determine

that admitting him ... would not compromise the security or administration of the Atlanta Federal Penitentiary." (*Id.*, ¶ 6). On the uncontroverted evidence before it, the court finds no abuse of discretion in Warden Hanberry's actions.

The court has determined that the prison regulations at issue, 28 C.F.R. § 540.60 *et seq*, are not unconstitutional as alleged by plaintiff. For this reason plaintiff is not, and was not, entitled to an interview with the inmate he specified. There is no basis, therefore, for ordering the demanded transportation to enable plaintiff to conduct the interview. The court hereby GRANTS summary judgment in favor of defendants on all of plaintiff's claims.

---

**2.** The Atlanta Press Club makes two arguments to which the court deems a response necessary. The club contends that the government could have devised a better method of insuring administrative ease. While this may be true, the government need not devise the best system possible but merely have a rational basis for the system it does devise. Second, the club argues that the regulations are vague and ambiguous. In making this argument the club points only to portions of the statute which are not at issue in

this case. Neither plaintiff nor the amicus have standing to challenge the constitutionality of portions of the regulation which are not relevant to the case, when the regulation as it applies to plaintiff (i.e., § 540.2(b)(4)) is not, and is not even alleged to be, vague or ambiguous. Federal courts are not in the business of rendering advisory opinions. *United Public Workers v. Mitchell,* 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).